HERBERT MEE, an Infant, by EDWIN A. WATSON, His Guardian ad Litem, Appellant, *v.* HENRY W. GORDON et al., Respondents, Impleaded with Others.

1. WILL — WHEN ABSOLUTE GIFT IS CUT DOWN TO LIFE ESTATE, WITH ABSOLUTE REMAINDER TO DEVISEE'S WIFE AND CHILDREN. A testamentary provision dividing an estate equally between testatrix's brother and three others, share and share alike, is modified by an immediately succeeding clause, directing that the share due her brother be invested by her executors "for his benefit during his natural life and for the benefit of his wife and his issue after his death," so that an apparently

absolute gift of such share is cut down to a life estate therein; and such clause creates a valid express trust to collect the rents and profits for his benefit during his lifetime with an absolute remainder to his wife and children.

2. DESIGNATION OF TRUSTEES AS "EXECUTORS" DOES NOT INVALIDATE TRUST PROVISIONS — WHEN DIRECTION TO INVEST TRUST "FOR BENEFIT" OF CESTUI QUE TRUST IMPLIES COLLECTION OF RENTS AND PROFITS AND PAYMENT THEREOF TO BENEFICIARY. The fact that the trust created by such clause is imposed upon persons who are designated as executors rather than as trustees, does not invalidate the trust, since the duties imposed upon a person rather than the name applied to him in a will measure his office and position, and the duties of trustees having been imposed upon such executors, they must be regarded as trustees rather than as executors; nor does the fact that there is no explicit direction that the rents and profits of the brother's share shall be collected and paid over to him as a life tenant prevent the execution of the trust in that way, where it is directed that his share shall be invested for his benefit during his natural life and there is no other possible way in which such direction can be carried out, since such direction necessarily implies that the principal shall be kept intact and no power is given him to dispose of such share by will or otherwise.

3. WHEN TRUST NOT VOID AS SUSPENDING POWER OF ALIENATION. The direction that the investment of the trust should be, after the death of her brother, "for the benefit" of his "wife and issue after his death," does not, under the liberal construction of the will required by law, violate the statutes relating to the suspension of the power of alienation, in that it requires the investment to be kept and the trust continued after the death of her brother for the benefit of his wife and children, where there is no provision, either by express terms or necessary implication, that a trust was intended for their benefit rather than a final and absolute distribution of the share.

*Mee* v. *Gordon*, 104 App. Div. 520, reversed.

(Argued January 18, 1907; decided February 26, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 29, 1905, which reversed an interlocutory judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and directed a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Gerard Roberts* for appellant. There is no ambiguity in the so-called second disposition of the property of Harriet

26

M. Kemp. (*Goodwin* v. *Coddington*, 154 N. Y. 283 ; *Smith* v. *Bell*, 6 Pet. 79.) Even if the testatrix's intention had been to direct the executors to invest the share of John B. Mee for the benefit of his wife and issue after his death, this would not render the clause void nor suspend the power of alienation unlawfully. (*Matter of Mount*, 185 N. Y. 169.) The general gift of the income of real or personal property, making no mention of the principal, is equivalent to a gift of the property itself. (*Patterson* v. *Ellis*, 11 Wend. 298 ; *Hatch* v. *Bassett*, 52 N. Y. 362 ; *Locke* v. *F. L. & T. Co.*, 140 N. Y. 135–146 ; *Bishop* v. *McClellan*, 44 N. J. Eq. 450 ; *Lawton* v. *Woodward*, 5 Del. Ch. 505.) A power of sale will be implied in the executor where it is necessary in order to carry out the provisions of the will. (*Ward* v. *Ward*, 105 N. Y. 74 ; *Marx* v. *McGlynn*, 88 N. Y. 376 ; *Morse* v. *Morse*, 85 N. Y. 53 ; *Lesser* v. *Lesser*, 11 Misc. Rep. 223 ; *Meakings* v. *Cromwell*, 5 N. Y. 140 ; *Stewart* v. *Hamilton*, 37 Hun, 21.) The intention of the testatrix should be sought, and it was Harriet M. Kemp's evident intention that John B. Mee should enjoy only a life interest in one-fourth of her estate, and that upon his death, said one-fourth should pass as an absolute gift to his wife and his son in equal shares. (2 Jarman on Wills, 44–47 ; *Sherrat* v. *Bentley*, 2 M. & K. 149 ; *Philips* v. *Davies*, 92 N. Y. 199 ; *Nellis* v. *Nellis*, 99 N. Y. 505 ; *Mead* v. *Maben*, 131 N. Y. 255 ; *Buell* v. *Southwick*, 70 N. Y. 581 ; *Hennessey* v. *Patterson*, 85 N. Y. 91.) All parts of an instrument should be read together in ascertaining its meaning, and no part should be rejected if the meaning of the testatrix can be arrived at and her wishes carried out by giving effect to all clauses. (*Norris* v. *Beyea*, 13 N. Y. 282 ; *Tyson* v. *Blake*, 22 N. Y. 558 ; *Wager* v. *Wager*, 96 N. Y. 164 ; *Kurtz* v. *Weichmann*, 75 App. Div. 28 ; *Matter of Dippel*, 71 App. Div. 599.)

*George H. Taylor, Jr., Albert J. Appell* and *Henry W. Bookstaver* for respondents. An undivided one-fourth part of the testatrix's property was given in one part of the will

under consideration, in clear and decisive terms, to John B. Mee. It cannot be taken away or cut down to a life estate by raising a doubt as to the meaning or application of the subsequent obscure clause, nor by the subsequent words in the will which are not as clear and decisive as the words giving the estate. (*Thomas* v. *Snyder*, 43 Hun, 14; *Clark* v. *Lueppe*, 88 N. Y. 228; *Roseboom* v. *Roseboom*, 81 N. Y. 356; 15 Hun, 309; *Oothout* v. *Rogers*, 59 Hun, 100; *Haight* v. *Pine*, 3 App. Div. 434; *Freeman* v. *Coit*, 96 N. Y. 63; *Thomas* v. *T. C. Nat. Bank*, 19 Misc. Rep. 470; *Thomson* v. *Hill*, 87 Hun, 111; *Rozell* v. *Thomas*, 39 S. W. Rep. 351; *Washbon* v. *Cope*, 144 N. Y. 287.) The trust attempted to be created by the testatrix in the clause of the will in question is void. (L. 1896, ch. 547, § 76.)

HISCOCK, J. This is an action for partition and involves the construction of the last will and testament of one Harriet M. Kemp, who at death was seized of the premises of which partition is sought. The underlying specific question is whether a clause in said will which, standing by itself, devised an undivided portion of the premises to one John B. Mee, plaintiff's father, absolutely, was by an immediately succeeding clause so modified as to reduce said estate to an interest for life, with remainder to said Mee's wife and children.

The learned Appellate Division held that the first clause was not so modified and that, therefore, upon the death of the plaintiff's father no interest passed to the former. We are thoroughly persuaded that this decision not only defeated the plain purpose of the testatrix, but that it is unwarranted and should be reversed.

The clauses under review read as follows:

" In the event of my husband and myself dying at one and the same time or within a short period of each other, I give, devise and bequeath my estate to be equally divided between my sister Elizabeth Illensworth, my brother John B. Mee, my nephew William P. Illensworth and my niece Florence C. Illensworth share and share alike. I hereby direct that the

share due my brother John B. Mee be invested by my Executors for his benefit during his natural life and for the benefit of his wife and his issue after his death."

. The husband of the testatrix died a short time before she did, so that this disposition became operative upon the probate of the will.

It may be conceded, of course, that the first sentence standing alone and unmodified would have given a share to John B. Mee absolutely and without qualification. But it does not stand alone and unmodified. It is immediately, without the intervention of any other provision or purpose, followed by a second sentence which is clearly connected with and related to it, and which specifically treats of the share referred to and created in the first sentence. When this second sentence directs that " the share due my brother John B. Mee be invested," etc., it not only plainly but necessarily refers to the share which is described and created in the immediately preceding sentence. There is nothing else for it to refer to. It is utterly irrelevant and inexplicable unless it does refer to that share. Otherwise it is predicated upon nothing, means nothing and there is no excuse for its existence. As we look at it, even in the light of the learned opinion below and of the argument of counsel, it seems to us that this second sentence only becomes subject to the criticism of ambiguity and obscurity which is leveled at it when we deny to it its connection with the first sentence, and its natural and obvious meaning, and seek to find some other purpose which is nowhere disclosed in the will. We assume that if the testatrix had changed this entire provision, saying : " I give, devise and bequeath my estate to be divided equally between * * * my brother John B. Mee, * * * share and share alike, except that I hereby direct that the share due my brother John B. Mee * * * be invested," etc., no one would contend that the result of such provision as a whole was to create more than a life interest. It is possible that such form would have been a little plainer than the one in question, but not much, and it is too well settled to require the citation of

authorities that the intent of the testatrix will not be defeated by the injudicious use of punctuation or by the substitution for some perfectly apt word of one less so, providing her meaning can reasonably be found.

We think, therefore, that this second sentence does clearly relate to and modify the effect of the first one in so far as it relates to the interest of John B. Mee, and that it is sufficient to cut down, so far as he is concerned, the absolute estate first suggested to an interest for life even within the rules established by the cases relied upon by respondent like *Banzer* v. *Banzer* (156 N. Y. 429).

We do not regard it necessary to review all of the cases cited for the purpose of leading us to an opposite conclusion, for the same principles prevail in all of them, the variation in expression of those principles being but the reflection of the differing phase of facts presented in each case. We shall refer at any length only to that authority which seems to be most strongly relied upon by respondents.

The *Banzer* case held that an absolute estate created by an earlier provision in the will was not cut down to a lesser estate or interest by a later provision, but the facts upon which that decision was reached are removed by very many degrees from similarity to those now presented to us. This is made apparent not only by an examination of the facts themselves, but by a consideration of what was said by Judge MARTIN. The action involved an alleged interest of a widow in real property which passed under the will of her husband. The first provision, as stated in the opinion, read: "I give and bequeath to my wife all my real and personal estate at present or hereafter in my possession; my real estate, consisting at present of a part of a house known as number 220 West 32d Street." This was the only provision which in any way related to the real estate of the testator, and, as was conceded, disclosed a clear and manifest intent to devise to the wife the real estate in question and to vest in her an absolute fee to the property. As was said by Judge MARTIN: "No clearer or more decisive language could have been employed to effec-

tuate that purpose." After this provision another was inserted in the will as follows: " And my personal estate, and whatever belonging to me at my death, whatsoever and wheresoever, of what nature, kind and quality soever may be, that she shall have undisputed right to and dispose of according to her own judgment; that, after her death, my beloved children, or their executor, administrator, shall divide the same, share and share alike."

Reviewing this last clause, Judge MARTIN said that it was probable that it was intended to apply only to personal property, adding: "But be that as it may, we think it is quite apparent that that clause was not intended and cannot be held to affect or cut down the devise of his real estate to his wife. Its provisions are distinct and disconnected from the clause disposing of the real estate in suit. The manifest purpose of that provision was to dispose of the remainder of his property not previously and specially devised, and not to change or modify the previous provisions of his will."

It is perfectly manifest that natural and legal construction led directly to the conclusion thus stated. No reasoning can make plainer than does a mere reading of the last clause that its controlling purpose is the disposition of personal rather than of real estate, and that there is no language used which within any principle of interpretation ever adopted sufficiently connects the last clause to the first one and reduces the absolute devise first made to a lesser estate.

But it is urged that assuming the later clause before us to be connected with and applicable to the first clause and otherwise sufficient to limit the interest of John B. Mee to one for life, said later clause is subject to such vices as to make it ineffective to accomplish such result. These alleged faults are, first, that it does not create any authorized trust for the life of John B. Mee, and, secondly, that if it does create a trust for his life it seeks to continue the same during the lives of his wife and children and, therefore, offends against the rule relating to the suspension of the power of alienation. It is possible that if the predominating purpose in the

construction of wills was to seek faults and declare them invalid, we might be led to the conclusions thus urged upon our attention.     But remembering that the opposite purpose should prevail where legally possible we have no great trouble in determining that the clause in question created a valid express trust to collect the rents and profits for the benefit of John B. Mee during his lifetime, and that the disposition contemplated by the testatrix after his death was an absolute remainder to his wife and children.     We will take up the objections urged to the clause in the order stated.

The duty of investing and administering the share in question it is true is imposed upon persons who are designated as executors rather than trustees, but it is a very familiar rule that the duties imposed upon a person rather than the name applied to him in the will should measure his office and position, and that where the duties of a trustee are imposed upon a person he will be regarded as a trustee rather than an executor.     (*Tobias* v. *Ketchum*, 32 N. Y. 319, 327 ; *Ward* v. *Ward*, 105 N. Y. 68, 74.)

No power of sale is expressly conferred upon the executors, but they are directed to invest the share being disposed of, and if compliance with this direction involves the sale of real estate the possession of such power will be implied.     (*Van Winkle* v. *Fowler*, 52 Hun, 355 ; *Dorland* v. *Dorland*, 2 Barb. 63 ; *Morton* v. *Morton*, 8 Barb. 18.)

The testatrix does not say in explicit words that the rents and profits of the share with which she is dealing shall be collected and paid over to the life tenant.     But there is no possible way in which her commands with reference to it can be obeyed except by doing that very thing.     It is directed that the share shall be invested, and this necessarily implies that the principal is to be kept intact.     It is directed that it shall be invested for the benefit of the life tenant during his natural life and no power is given to him of disposition by will or otherwise, and how then shall he get the benefit of this share thus invested except by the collection and payment to him of the rents and profits thereof.

In short, by express provision and necessary implication we seem to find all of the essential elements of a familiar express trust.

Passing to the second criticism, it is true that the investment of this share is also declared to be for "the benefit" of the life tenant's wife and issue after his death, but certain prominent features of this provision lead naturally to the interpretation that an absolute disposition in, remainder was intended rather than the creation of a second trust. We must remember all through the construction of this will that apparently it was formulated by the testatrix herself, and that, therefore, we must measure the language and seek her intentions somewhat from the standpoint of a layman. The testamentary scheme which we have credited to her of creating a life trust for her brother made it necessary or proper that there should be an investment of the property. Such investment would be for his benefit during life. It was also natural and appropriate that the testatrix should direct that this investment, secondarily, should be for the benefit of the wife and children. That was the fact. It was for their benefit. But we discover nothing which requires that this benefit should be derived only through the medium of a trust. The direction for investment of the share became applicable immediately upon her death and was incidental to the life trust. Its purpose would be served by carrying the principal of the share forward to the death of the life beneficiary with final distribution at that time. If an investment had been directed after the death of the life tenant for the benefit of the others, then there might be found some evidence of a purpose to tie the property up in a trust commencing at that time for a second set of lives. But such aspect is wanting. Neither does the direction that the investment should be after the death of the husband "for the benefit" of the wife and children necessarily or even by any preponderance of argument lead to the conclusion that a trust was intended rather than a final and absolute distribution of the share. There is nothing in the quoted words which is sacred to the idea of a trust. On the

other hand it is obvious that in no manner would the beneficiaries more thoroughly and fully get the benefit of the property than by passing it over to them in absolute remainder with unlimited right of use and enjoyment. This view and the conclusion that testatrix intended such an absolute remainder rather than a trust, are supported by what was held and said in *Crain* v. *Wright* (114 . N. Y. 307).

In that case the question arose whether a devise to the testator's widow of certain lands " to have and to hold for her benefit and support " conferred an estate in fee or for life, and the former was held to be the correct answer. Judge Vann after reference to the provisions of the Revised Statutes that the term " heirs " or other words of inheritance shall not be requisite to create or convey an estate in fee and that every grant or devise of real estate shall pass all the estate or interest of the grantor or testator " unless the intent to pass a less estate or interest shall appear by express terms or be necessarily implied in the terms of such grant," said: " We think that the words ' for her benefit and support ' indicate the reason for making the gift, rather than the intention of the testator to annex a condition or limitation to the gift. ＊ ＊ ＊ Moreover, the premises were devised to her not only for her support, but for her benefit. The use of the word ' benefit ' in connection with a gift of property, is significant. It is consistent with a devise in fee, but inconsistent with the devise of a life estate. A gift to a person for his benefit means an absolute gift, and excludes the idea of a qualified or limited estate."

What we may regard as the natural meaning and scope of the provision for the benefit of the wife and children as framing an absolute estate in remainder is confirmed by a comparison of the provision for them with that for the life beneficiary. Some very significant omissions will be noted in the case of the former. The benefits to be derived by John B. Mee are expressly limited to his life. No such limitation is applied to his successors. Then no course is marked out

410          People ex rel. Perkins v. Moss.          [Feb.,

Statement of case.                    [Vol. 187.

for this share after the death of the wife and issue, as properly would have been done if their interest was limited by life, but the "benefit" is conferred upon them absolutely and without qualification as to manner or duration of enjoyment. Under all of these circumstances we think that we are amply justified in interpreting the intent of the testatrix to have been to give an absolute remainder.

As was said in *Du Bois* v. *Ray* (35 N. Y. 162), where it was being contended, as here, that the testator had provided for an unlawful suspension of the power of alienation : "It is to be presumed that the testator intended to make a legal disposition of his estate, and not a void or illegal one ; intestacy is what he never intended or contemplated. It is the duty of the court to give to the language used such construction as will make the instrument or limitation legal and valid, if it can be done in harmony with well-settled rules, with the manifest intent, and adjudicated cases, rather than such construction as will render them illegal and nugatory."

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs to the appellant in both courts.

Gray, Edward T. Bartlett, Vann, Werner and Chase, JJ., concur ; Cullen, Ch. J., concurs in result.

Judgment accordingly.