In the Matter of the Estate of BERTHA ROTH, Deceased.

Surrogate's Court, New York County, March 19, 1925.

**Wills — construction — testatrix gave entire estate to father on condition that at his death he would divide one-half of his estate among designated legatees in specified amounts — will further provided that " remainder of the half " of said father's estate should be paid in equal shares to named charities — gifts to legatees, including charities, must be paid out of said one-half of corpus — other one-half at father's death vested in his estate.**

Under a will in which the testatrix gave her entire estate to her father on condition that upon his death he leave half of his entire estate to be divided among certain designated legatees in specified amounts, and that " the remainder of the half " of said father's estate should be paid in equal shares to named charitable corporations, all the gifts to the remaindermen, individuals and charities, must be paid out of the said one-half of the corpus. The other one-half of the estate of the testatrix vested in the father's estate outright at the date of his death.

PROCEEDING for accounting involving the construction of a will.

*Theodore Baumeister,* for the administratrices.

*Kramer, Cohn & Meyer,* for Lucy Kramer.

*Frederic De Peyster Foster,* for the Society for Relief of Destitute Blind.

*Paul G. Gravenhorst,* for Wartfurg Orphan Farm School.

*Albert E. Marks,* for Mary F. Champlin.

*Lewis A. Abrams,* special guardian.

FOLEY, S.:

In this accounting an issue as to the construction of the will arises. After making certain specific bequests, the will provides in paragraph 3: " Unto my father, Joseph Roth, I give and bequeath my entire estate, with absolute use and control of everything — it being understood that my estate is to become the sole and exclusive property and possession of my father, under the condition, nevertheless that upon the death of my said father one half of the entire estate he leaves is to be divided as follows: To my cousins, Lizzie Gasser, Margaret Gasser Thompson, Josephine Gasser, Katie Gasser and Lucy Bosshard, I give the sum of one thousand ($1,000) Dollars each. To the two surviving children of the deceased cousin, Tillie Gasser, five hundred ($500) dollars each; to Theodore Bosshard, Ruth Loveless and Carl Loveless, five hundred ($500) Dollars each. * * * To my friend, Miss Mary F. Champlin, I give five hundred Dollars ($500) and to Mrs.

Mary Dunn, the sum of five hundred ($500) Dollars for her faithful service to my mother. * * *'' Paragraph 4 provides: " The remainder of the half of my father's estate is to be divided in equal shares as follows — The Young Womens Christian Association, The Wartburg Orphan Asylum, The Home for the Destitute Blind, The Isabelle Heimath, The Salvation Army of New York."

Various questions as to construction are raised by the parties as follows:

(a) Was there an absolute gift of the entire residue to the father or was he given a legal life estate with power to invade the principal?

(b) If the latter alternative is to be adopted, did one-half of the property remaining at the time of his death vest absolutely in the father's estate and the remaining half vest in the individual legatees mentioned in paragraph 3 and the charitable corporations named in paragraph 4, thereby avoiding any intestacy?

(c) Were the charitable corporations entitled to one-half of the corpus, and out of the remaining half were the amounts directed to be paid the individuals named in paragraph 3 first to be deducted and the balance of the one-half paid to the next of kin of the testatrix through intestacy?

(1) At the father's death the entire fund was left intact in this estate. I hold that the gifts over of the remainder are effective and under the provisions of the will that one-half of the estate which remained at the date of death of the father became part of his estate outright. I hold further that as to the other half of such corpus remaining at the time of his death there must be paid the amounts specified in paragraph 3 to the legatees named therein and the residue of such one-half must be paid in equal shares to the charitable corporations named in paragraph 4. Although the will is somewhat ambiguous, I believe that the scheme of disposition intended by the testatrix is fairly clear. My conclusion necessarily rejects the theory that an outright gift was made to the father of the entire residue. It is claimed on this phase of the case that the absolute gift to the father could not be cut down by the ambiguous language contained in paragraph 3. It is contended that the case of *Tillman* v. *Ogren* (227 N. Y. 495) is authority for such an interpretation. But the will in the *Tillman* case was quite different in its terms from the one here. There the gift was to the husband of the decedent and to his heirs forever " *with the understanding* that at the decease of the said Lars Erickson [the husband] all of the estate which he shall derive under this will which shall then remain by him undisposed of *he shall give* and turn over to my sister Amanda Tillman." The Court of Appeals held that the husband, Lars Erickson, took an absolute gift and

that the words " with the understanding " were simply precatory. The court pointed out that this interpretation was further sustained by the use of the words " he shall give and turn over to my sister." In the present case, while the modifying clause begins with the words " it being understood," the more emphatic language is used " under the condition, nevertheless that upon the death of my said father one half of the entire estate he leaves is to be divided as follows." The phrase " under the condition nevertheless " is an absolute condition attached to the gift to the father, not a mere suggestion or request to him that he dispose of his estate as set forth in the subsequent paragraphs of the testatrix's will. Furthermore, the purpose of the testatrix to retain control of the ultimate distribution of one-half of the remainder is accentuated by the use of the words " I give," and the specific mention of the names of the legatees who were to take the fixed shares of the reaminder. In this regard the will is much like that construed in *Matter of Felt* (235 N. Y. 374). There the court upheld the validity of the remainder and determined that the specific direction for gifts over after the death of the life tenant was inconsistent with an absolute gift of the entire fund to the life tenant or with the right to invade the principal. Other authorities which support the conclusion reached by me are *Mee* v. *Gordon* (187 N. Y. 400); *Matter of Ithaca Trust Company* (220 id. 437); *Seaward* v. *Davis* (198 id. 415); *Leggett* v. *Firth* (132 id. 7); *Matter of Weiss* (124 Misc. 413); *Matter of Sweeney* (120 id. 663).

(2) Under the language of paragraphs 3 and 4 the will must be construed as vesting one-half of the corpus remaining at the death of the father in his estate outright. The testatrix clearly intended that such one-half should pass under his will, if any, or in default thereof, should vest in his next of kin. The only disposition made by the testatrix here was of the remaining one-half. Out of that part of the estate there must be paid to the specified legatees the amounts fixed in paragraph 3. The residue of that one-half, under the provisions of paragraph 4, must be distributed in equal shares to the charitable corporations named therein. The contention that the charities are entitled to one-half the fund must be overruled. The testatrix, after directing the payment of the pecuniary legacies, emphasized her intent to dispose only of the residue of the one-half by providing that " the remainder of the half of my father's estate is to be divided in equal shares " among the five charitable institutions. The words employed were clearly used by the testatrix with a definite purpose. We are bound to follow the language she selected. There is no

23

escape from the meaning of her directions. " Explanation cannot clarify them, and ought not to be employed to confuse them or lessen their significance." (*St. Louis & Iron Mountain, etc., R. Co.* v. *Taylor,* 210 U. S. 281.) Moreover, the deletion of the words " of the " in paragraph 4 so as to make the text read " the remainder " or " the remaining half," would nullify the expressed design of the testatrix. Excision is a dangerous remedy and should only be used as a last resort when all efforts to reconcile the inconsistency by construction have failed. (*Matter of Buechner,* 226 N. Y. 440; *Adams* v. *Massey,* 184 id. 62.) All the gifts to the remaindermen — individual and charities — must, therefore, be paid out of the one-half of the corpus and the remaining half passes in the father's estate under the words of absolute gift to him.

Submit decree on notice construing the will and settling the account accordingly.